# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TREONDOUS ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> KEVIN KINK, JOHN R. BALDWIN, and SHERRY BENTON, <br><br> Defendants. | Case No. 3:19-CV-00069-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Kevin Kink, John R. Baldwin, and Sherry Benton (Doc. 47). For the reasons set forth below, the motion is granted.

### INTRODUCTION

On January 23, 2019, Plaintiff Treondous Robinson, an inmate in custody of the Illinois Department of Corrections ("IDOC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1). Robinson filed an Amended Complaint on April 10, 2019 (Doc. 6). Robinson's allegations relate to the living conditions within his cell and medical treatment of a spider bite (*Id.*). Initially, Defendants asserted an affirmative defense regarding Robinson's failure to exhaust his administrative remedies but subsequently withdrew this defense (Docs. 18, 37, 38). Robinson is proceeding on three counts under the Eighth Amendment: one claim for unconstitutional

and unsanitary conditions of confinement including frequent power outages, excessive heat and humidity, a lack of running water, and bug infestation; one claim of deliberate indifference in failing to adequately treat his spider bite; and one claim of deliberate indifference in failing to adequately treat his emotional distress caused by the spider bite (Docs. 6, 7). At the time of the Complaint, Kevin Kink was employed as the Warden of Lawrence, John R. Baldwin was employed as the Director of the IDOC, and Sherry Benton was employed as an Administrative Review Board Chairperson (Doc. 48).

On September 7, 2021, Defendants filed a motion for summary judgment (Doc. 47). Robinson moved for an extension of time to file a response to the motion, which was granted, thus extending his response deadline to November 15, 2021 (Docs. 50, 51). Ultimately, Robinson did not file any response to the motion.[1]

In their motion for summary judgment, Defendants argue that the undisputed facts demonstrate Robinson did not experience unconstitutional living conditions but rather temporary discomfort that was rectified by prison staff. Defendants further contend that Robinson's ailments received medical attention and did not qualify as "serious medical needs." Defendants also argue that they lacked knowledge of Robinson's medical conditions, and, thus, could not intentionally disregard them. Lastly, Defendants assert qualified immunity as a defense to all claims (*Id.*).

---

[1] Pursuant to Local Rule 7.1(c), Robinson's lack of response could be interpreted as an admission of the merits of the motion.

## FACTUAL BACKGROUND

At the time of the underlying events, in June and July of 2018, Robinson resided in general population at Lawrence (Doc. 48-1, pp. 32-33). Robinson states that sporadic power and water outages occurred several times a week affecting every cell in his deck (Doc. 48-1, p. 37). The power and water took a few hours to restore in each instance (*Id.*). In the following months, Robinson filed several grievances relating to these incidents (Doc. 6, pp. 20-29).

Around the same time, Robinson alleges that his cell was infested with bugs (Docs. 6, 48-1, pp. 37-41). Lawrence had a contract with Pest Management Services to spray the facility monthly for spiders and insects (Doc. 48-4). Robinson recalls seeing someone spraying bug repellant outside his cell twice before he observed a bug bite on his arm (Doc. 48-1, pp. 38-40). Robinson noticed a baseball-sized spider bite on his forearm and alerted a correctional officer who sent him to the health care unit (Docs. 48-1, pp. 43-44; 48-5). On July 21, 2018, Robinson received treatment for his spider bite, including a bacterial cream and ibuprofen (Doc. 48-5). The treating physician conducted a follow-up appointment for the bite on July 23, and progress notes from August 8 indicate the wound was healed (Docs. 48-1, p. 45; 48-5).

In addition to the medical visits, Robinson saw mental health staff after the spider bite (Docs. 48-1, p. 23; 48-6). Robinson experienced paranoia and feared another spider would bite him (Doc. 48-1, p. 23). He received ongoing mental health treatment including medication, but after about a year, Robinson indicated that his anxiety and panic about

the spiders lessened, and he desired to opt out of further mental health treatment (Doc. 48-6, pp. 61, 63).

The medical treatment of Robinson's spider bite was handled directly by the medical staff at Lawrence (Docs. 48-2, 48-3, 48-4). Defendants Baldwin, Benton, and Kink all assert that they are not trained physicians and defer all medical treatment decisions to the institutional medical staff (Docs. 48-2, 48-3, 48-4). Further, Defendants Baldwin and Benton assert that they are not involved in pest control at each institution (Doc. 48-2, 48-3).

Concerned with his unsanitary living conditions and the medical treatment for his spider bite, Robinson filed several grievances (Doc. 6, pp. 20-29). He submitted grievances for power outages which affected the water, temperature, and smells in his cell and triggered his asthma (*Id.*). Robinson also submitted grievances for his dissatisfaction with the medical treatment of his spider bite and lack of extermination effort generally (*Id.*). He also complained that the Administrative Review Board mishandled his grievances (*Id.*). Aside from filing grievances, Robinson did not communicate directly with any defendant about his living or medical conditions (Doc. 48-1, pp. 48, 55, 60, 64).

Each defendant has a varying level of involvement in handling prisoner grievances. As the Warden of Lawrence, Defendant Kink reviewed grievances, however, generally one of his designated signatories reviewed and signed grievance decisions on his behalf, including those filed by Robinson (Doc. 48-4). Defendant Baldwin supervised the Administrative Review Board (Doc. 48-2). He also had signatories review and approve board decisions, including those filed by Robinson (*Id.*). As such, Baldwin and

Kink deny being personally aware of Robinson's complaints regarding medical treatment and cell conditions (Docs. 48-2, 48-4).

Defendant Benton, as Chairperson of the Administrative Review Board, did personally review and provide responses to Robinson's grievances. Benton denied Robinson's grievances related to cell conditions because department rules require prisoners to attempt to resolve issues at the facility level prior to submitting a formal grievance, and Robinson failed to demonstrate such action had been taken (Docs. 6, p. 34; 48-3). Benton denied Robinson's grievance related to the spider bite and medical treatment indicating deference to the judgment of the physician or healthcare staff (Doc. 6, pp. 31-32). Benton also warned that future grievances pertaining to the same issues, which had already been addressed, would not receive a response (Doc. 6, p. 33). As a result of the denied grievances, Robinson filed this action (Doc. 1).

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 322-24. A moving party is entitled to judgment as a matter of law where the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. The party opposing summary judgment must offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

II. <u>**Eighth Amendment Unconstitutional Conditions**</u>

The Eighth Amendment places a duty on prison officials to provide prisoners "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This means that prison officials must "take reasonable measures to guarantee the safety of the inmates" and "ensure that inmates receive adequate food, clothing, shelter and medical

care." *Id*. Prison officials have a responsibility to provide prisoners, at a minimum, with the necessities of civilized life including shelter, sanitation, and utilities. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989).

A prisoner plaintiff needs to establish two elements to succeed on an Eighth Amendment claim for deliberate indifference to a substantial risk of serious harm. The first is an objective component requiring that the deprivation or conditions of confinement alleged are "sufficiently serious" to result in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Generally, the prisoner plaintiff must show that he is or was "incarcerated under conditions posing a substantial risk of serious harm" to his health or safety. *Id*. The second element is a subjective component, which requires the prisoner plaintiff to establish that the defendants were "deliberately indifferent" to the unlawful conditions of confinement. *Id*.

In conditions of confinement cases, the relevant state of mind is deliberate indifference to an inmate's health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *Id.* at 839. This subjective state of mind component is akin to intentional or criminally reckless conduct. *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Rivera v. Gupta*, 836 F.3d 839, 842 (7th Cir. 2016). "There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm." *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir. 1997) (citing *Farmer,* 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety

may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.")).

### III.     Eighth Amendment Deliberate Indifference to Medical Needs

The Supreme Court has also recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)). "[T]he Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another." *Gaston v. Ghosh*, 11-CV-6612, 2017 WL 5891042, at *11 (N.D. Ill. Nov. 28, 2017) (citing *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017)).

To succeed on a claim of deliberate indifference, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)) (internal quotation marks omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer*, 511 U.S. at 828 (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409; *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry*, 604 F.3d at 440 (citing *Gayton*, 593 F.3d at 620).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th

Cir. 2016). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441.

## ANALYSIS

### I. Unconstitutional Conditions of Confinement

Defendants argue that summary judgment is appropriate because they did not subject Robinson to unconstitutional conditions of confinement.

The Court agrees. Upon this record, no reasonable juror could conclude that any defendant, John Baldwin, Sherry Benton, or Kevin Kink, deprived Robinson of basic human needs or subjected him to conditions that posed a serious risk of harm to his health or safety. While Lawrence experienced several power and water outages in the summer of 2018, Robinson admits that the outages were resolved within a couple hours in each instance. Robinson also claims his cell had a bug infestation, but he acknowledges that he did see someone spraying for bugs around the prison. Certainly, these temporary outages and bug sightings caused Robinson discomfort and inconvenience, but they do not rise to the level of an unconstitutional condition of confinement. Robinson's claims fail to satisfy the objective component requiring that the deprivation or conditions of confinement resulted in the denial of "the minimal civilized measure of life's necessities."

Even if the objective component was satisfied, Robinson cannot show that

Defendants knew of and subsequently disregarded his living conditions leading to an excessive risk of his health and safety. Defendants Baldwin and Kink deny any personal knowledge of Robinson's complaints concerning his living conditions as their signatories processed the grievances, and they did not personally review his filings. Robinson also admits that he did not communicate directly with any defendant regarding his living conditions. Defendant Benton did have personal knowledge of the conditions through review of Robinson's filed grievances, but her actions in denying the grievances cannot be interpreted as disregarding an excessive risk to Robinson's health or safety. (The same is true for the signatories acting on behalf of Defendants Baldwin and Kink.) The power and water outages were already resolved within a couple hours of occurrence. Additionally, Lawrence contracted with a pest control company to spray for insects regularly to prevent and manage infestation. Robinson fails to show that Defendants knowingly disregarded an excessive risk to his health or safety, and the Court finds that Defendants are entitled to summary judgment.

## II.     Deliberate Indifference to Medical Needs

Defendants also argue that summary judgment is appropriate because they were not deliberately indifferent to Robinson's serious medical needs.

Regarding the first prong of the deliberate indifference analysis, Defendants argue that Robinson's physical and mental conditions do not constitute an objectively serious medical need. While not apparently life-threating, Robinson's spider bite was "baseball-sized" and required follow-up treatment, as did his paranoia following the bite. His mental distress required medication and ongoing mental health evaluation. Moreover,

Robinson's physical and mental conditions are possibly the types of conditions that would result in further significant injury or pain if left untreated. These ailments could qualify as conditions posing serious medical needs for purposes of the Eighth Amendment analysis.

Turning to the second prong of the deliberate indifference analysis, Robinson must show Defendants knew of and subsequently disregarded an excessive risk to his health. Robinson cannot make such a showing. Defendants Baldwin and Kink deny any personal knowledge of Robinson's spider bite or mental health issues as their signatories processed the grievances related to his medical treatment. Defendant Benton did have personal knowledge of the incident through review of Robinson's grievances. Again, however, just as with the living condition grievances, Benton's denial of the grievances cannot be interpreted as disregarding an excessive risk to Robinson's health. Importantly, Baldwin, Kink, and Benton are not medical professionals and are in no position to treat any type of medical condition, so it is appropriate for them to defer to the judgment of prison medical staff. *See Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010) (Nonmedical personnel are entitled to defer to the judgment of prison health professionals.). While Defendants cannot ignore medical needs of prisoners and should ensure access to treatment to address serious medical complaints, Robinson's medical records reflect that he did receive ongoing medical care for his spider bite and mental health treatment for his paranoia triggered by the bite. By reviewing and subsequently denying the grievances, directly or by signatory, Defendants did not disregard an excessive risk to Robinson's health, as Robinson was being treated for the ailments under the discretion of

his treating physician and the health care staff. Furthermore, both his physical and mental conditions improved with treatment.

Based on these facts, no reasonable jury would find that Defendants intentionally or recklessly disregarded a risk to Robinson's health. Instead, the evidence indicates that Defendants entrusted medical treatment to the professional judgment of prison medical staff, and Robinson's physical and mental health improved because of treatment he received. On this record, the Court finds that Defendants are entitled to summary judgment on Robinson's deliberate indifference to medical needs claim.

## CONCLUSION

For these reasons, the motion for summary judgment filed by Defendants Kevin Kink, John R. Baldwin, and Sherry Benton (Doc. 47) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:  January 11, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**